657 So.2d 171 (1995)
Jody Michael RAY (W.P. Ray & Sabrina Messer), Plaintiff-Appellee,
v.
Donna P. RAY, Defendant-Appellant.
No. 94-1478
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
*172 Errol David Deshotels, Oberlin, for Jody Michael Ray.
James Patrick Bodenheimer, Shreveport, for Donna P. Ray.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
DOUCET, Chief Judge.
The mother of a minor child appeals a trial court judgment ordering visitation with the paternal great-grandfather and aunt of the child.
Jody Michael Ray and Donna P. Ray were married in June 1987. They had one child, Casey Nichole Ray, who was born on March 10, 1988. They were divorced by a judgment rendered July 25, 1990. Donna was granted custody of the child, subject to visitation by Jody. Jody died sometime after the divorce and before the filing of this matter. On April 1, 1993, W.P. Ray and Sabrina Messer, Jody's grandfather and sister, respectively, filed this petition for visitation with Casey. Donna filed an exception to venue that was denied. She applied for writs to this court seeking review of that decision. This court denied the application finding no error in the trial court's decision. After a hearing on the merits, the trial court granted visitation to the petitioners, W.P. Ray and Sabrina Messer. They were granted two ten day visitation periods each summer and a week of visitation during alternating Christmas and Easter vacations. The court further ordered Donna Ray (now VanGundy) to advise the *173 petitioners of any changes of address. Donna appeals.
La.Civ.Code art. 136 provides, in pertinent part, that:
"B. Under extraordinary circumstances, a relative, by blood or affinity, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative.
C. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article."

EXTRAORDINARY CIRCUMSTANCES
The appellant argues that the trial court erred in finding the existence of extraordinary circumstances giving the petitioners the right to visitation with Casey. We disagree. The trial judge in his written reasons said:
"The court is of the opinion that the present situation of the parties is an extraordinary one. Here the father of the child is deceased. Defendant argues that the death of a parent alone does not constitute an `extraordinary circumstance'. While the court feels that it does, there is more here in the present case. The testimony revealed that Jody Ray and Donna Ray, now VanGundy, lived for a period of time with W.P. Ray, the great grandfather and that Jody Ray and his sister, Sabrina Messer, the other petitioner were raised by W.P. Ray and his wife, Mildred Ray. This is an extraordinary circumstance, not the usual and ordinary circumstance. Because Mr. and Mrs. Ray raised Jody Ray, there was more that the usual grandfather, grandson relationship. The other unusual fact is that W.P. Ray and Sabrina Messer want to have a relationship with Casey Ray and unless some type of visitation is granted, there is a likelihood that because of the remarriage of the mother and the distance between them and the child, this relationship may be lost. Thus, the court feels that the `extraordinary circumstances' test has been met."
In reviewing this matter, this court has found no jurisprudence defining the term "extraordinary circumstances" as used in La. Civ.Code art. 136. However, after reviewing the record in this matter, we conclude that the trial judge correctly decided that extraordinary circumstances exist here. The child's father is dead. There is no paternal grandfather who would have a right to visitation under La.R.S. 9:344. As a result, the natural conduits through which the great-grandfather and aunt might develop a relationship with Casey are missing. We believe that it is to remedy such situations that La.Civ.Code art. 136 was enacted. Through this article, the law provides a means of maintaining family relationships where they might otherwise be lost to the child. Therefore, the trial court correctly found extraordinary circumstances in this case.

BEST INTEREST OF THE CHILD UNDER LA.CIV.CODE ART. 136(B)(1)-(5)
The appellant next argues that the trial judge erred in failing to consider the factors enumerated in La.Civ.Code art. 136(B)(1)-(5) in determining whether visitation was in the best interest of the child. It is true that the trial judge's written reasons do not reflect that he considered those factors. However, after reviewing the factors in light of the facts of this case we cannot say that he was incorrect in concluding that visitation is in the best interest of the child.
The first factor to be considered is the length and quality of the prior relationship between the child and the relative. The record reflects that although the child and *174 her mother had lived with the paternal great-grandparents shortly after the birth of the child, there had been little or no visitation between them since the divorce. However, this does not appear to be the fault of the petitioners. The testimony shows that the petitioners made efforts to keep in contact but that the mother's frequent moves kept them from doing so.
The next factor to be considered is whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative. In this case, the petitioners may be the only link the child has to her dead father. Donna's testimony reveals that when Casey talks to her about her father, Donna doesn't know what to say. W.P. Ray raised Jody and his sister in his home, acting as a father to the two. Sabrina Messer is Jody's only sibling. Since Donna was divorced from Jody and has remarried, the child might never learn about her father in a favorable context if she is denied contact with her father's family. We believe this knowledge to be "enlightenment, or tutelage which can best be provided by" the father's family.
The next factor need not be considered since Casey is only about six years old.
Next, we must consider the willingness of the petitioners to encourage a close relationship between the child and her mother. The record reflects no desire by the petitioners to weaken the bond between Casey and her mother. They simply want to know her themselves. Further, Donna herself has agreed that Casey should know her father's family.
Finally, the court must consider the mental and physical health of the child and the relative. The record reflects that W.P. Ray is in excellent health especially considering his age of 67 years. There was no evidence to suggest that his mental health is in question. Nor was there any evidence to suggest that Casey's health, mental or physical, would suffer from visitation with her father's family.
Consideration of the factors enumerated in La.Civ.Code art. 136 leads to the conclusion that visitation with the petitioners is in the best interest of the child.
Accordingly, even if the trial judge failed to consider these factors, the error was harmless, since consideration of them would have led to the same conclusion.

VISITATION OF SABRINA MESSER
Appellant next argues that Sabrina Messer's claim for visitation is premature because W.P. Ray is still alive. We find nothing in La.Civ.Code. art. 136 or the jurisprudence which limits the right of one relative to visitation while another relative is still alive. For the reasons outlined above, we find that the trial court correctly found visitation with Sabrina Messer to be in the best interest of the child.

AMOUNT OF VISITATION
Finally, the appellant contends that the trial court was in error in awarding specific periods of visitation and in awarding excess amounts of visitation. In Noe v. Noe, 93-1316, p. 2 (La.App. 3 Cir. 5/4/94); 640 So.2d 537, 538, this court stated concerning child visitation that:
"The trial judge is afforded wide discretion in determining which arrangement will best serve the best interest of the child and his determination will not be disturbed in the absence of manifest error. Lachney v. Lachney, 446 So.2d 923 (La.App. 3d Cir.), writ denied, 450 So.2d 964 (La.1984); Gordy v. Langner, 502 So.2d 583 (La.App. 3d Cir.), writ denied, 503 So.2d 494 (La. 1987)."
The appellant argues that the court ordered periods of visitation will be a great inconvenience to her. She argues that visitation during holidays and summer vacation will ruin her holidays and her ability to make summer plans. She further asserts that specific periods of visitation are not necessary because the parties can work this out among themselves. We disagree. The appellant has announced her intention to move to Fort Worth, Texas. The petitioners live in a rural area near Oakdale, Louisiana. Given the distance between the parties, we believe that without specific visitation, the "inconvenience" *175 to the appellant might prevent meaningful visitation from ever occurring. The record shows that when Jody was alive, the appellant had difficulty scheduling regular visitation and frequently canceled arrangements made with him under a looser visitation order. Concerning the amount of visitation, under the trial court's order Casey will spend less than a month with her father's family each year. This is minimal visitation if the parties are to form a family relationship. Additionally, if visitation were ordered in smaller increments but at shorter intervals, the inconvenience to the appellant would be increased rather than decreased. Since Casey is school age, holiday periods and summer vacation present the only opportunity for meaningful visitation. Consequently, we find no abuse of discretion in the times or the amounts of visitation ordered by the trial judge.
The trial court's judgment is affirmed at appellant's costs.
AFFIRMED.